Welcome, this morning, to the Eleventh Circuit. We are going to hear two cases today, but before we get started with our first case, just a couple of housekeeping matters. First of all, Judge Luck and I are very pleased to be joined today by Judge Moreno. We certainly appreciate his service and look forward to sitting with him another day this week. Also, I'm sure most people are familiar with our traffic light system, but if you are not, there is a green light, a yellow light, and a red light. And when the yellow light goes on, that means you have two minutes left. It's time to start thinking about wrapping up your remarks. When the red light comes on, you should assume that means you have permission, unless one of us says otherwise, to finish your sentence, not finish the whole idea that you just started. And with that, we will go ahead and get started with our first case. Savannah Shoals, LLC, Green Creek Resources, LLC, Tax Matters Partner v. Commissioner of Internal Revenue, 24-12661. And Ms. Bradford? Oh, O'Brien. Sorry about that. We have a substitution on my and I see that you have reserved two minutes for rebuttal. You may proceed when you are ready. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Joseph O'Brien, and I, along with my colleague Cassandra Bradford, represent the appellant in this case, Savannah Shoals, LLC. We're here today seeking a remand of this case to the Tax Court with the set forth in our brief, principally for three reasons. First, the IRS's mining expert made significant errors in its analysis of the property, which the Court failed to properly take account of. Which expert was that? That was the IRS's mining expert, Kevin Ganesh. Okay. Now, let me ask you this, and it may be because of my experience as a trial judge, whether it's tax court or district court, all the time, the trial court, the tax court here, here's two experts, right? You have Ganesh, or Ganesh, how do you pronounce it, Ganesh, Bridger, and then you have the other two, and the judge accepts one or the other. Isn't that what the judge did in this case? Can he do that? Yes, Your Honor. However, Section 7459 states that the tax court must make a sufficient finding of fact and law, examining that evidence and deciding whether or not which expert they decide is more credible. I read this order, and you don't think it's complete enough. What part, where do you think he failed to do that? Which expert? So, Mr. Ganesh, Your Honor, he was engaged by the IRS to conduct a discounted cash flow analysis and determine the financial feasibility of the property for mining, and in doing so, the inputs that he used in his report were incorrect. But if the judge found that there's no market demand for the query, for all the factors that your opponent has stated in the brief, how many queries does he have to do the discount analysis? Yes, Your Honor. Why? If there's no market demand, there's not going to be a query. Why can't a judge make that decision? Because the courts have held that demand is but a factor in determining the highest and best use of the property, but it alone is not determinative of the entire determination of highest and best use. And so when you have these two competing experts in this case, the taxpayers experts saying there's a net present value of $30 million, and if the mistakes were corrected in the IRS's expert report saying that would result in a $24 million net present value, demand is taken into account in running both of those calculations, especially when setting the price of materials as well as the discount rate that is applied. The discount rate that's applied in discounted cash flow analysis represents the minimum return that an investor would expect to get. In TOT, though, we do not do a discounted, and we did not approve a discounted cash flow methodology. What we did is exactly what Judge Moreno asked about, which is they looked at surrounding properties and saw that there was an excess demand for development there. There was a bunch of houses and open properties that had not been developed, and so there'd be no demand for this one, and based on that approved the reduced valuation. Isn't that exactly the methodology that was used here by both IRS expert and accepted by the tax court? Yes, Your Honor. However, what we're arguing is that that yes seems to not be helpful to you. Well, it's that the court in that case, they did take into account demand, but what we're saying is when you have a situation as in this case with two experts, one of which made errors in its report, which would have led to a positive return in its net present value, the financial feasibility must be accepted to show that this is financially feasible to mine this property, and then you would go on to compare the uses of the property, the potential uses, to see what's the maximum. So you want us to apply this four-criterion test, and you want to make it so that us to say that the tax court in all our circumstances has to use that, and in your briefing you say that this test comes from case law, but I don't see that you've cited any circuit cases actually adopting that test, and even the tax court cases that you're citing don't necessarily present this four-factor test as mandatory. Is there any authority that mandates the use of this test? So, Your Honor, we would look to the common law of all the cases in a variety of contexts that have endorsed this four-factor test. In addition to that, the tax court has held before... But it's not a balancing test. Even if we were, I think Judge Grange is exactly right, but even if we were to adopt it, it's an and test, not a balancing test, right? So it's been described as a four-factor test, but the way that it's been applied is an element test. Right, and if one element is gone, in other words, if there are four, if there's a car with four tires on it and one tire is not there, the car ain't driving. You're correct, Your Honor, but demand and market analysis is a part of determining the financial feasibility of the property. It in itself is not the entire factor, and what we're stating here is that the experts who did the discounted cash flow analysis and came together, they accounted for that. I just don't know how we could say that the tax court didn't correctly apply the actual law. So the 26 CFR 170A-14H3II, which are the factors that one considers when making these determinations of highest and best use. And there, the court, the regulations say that the tax court is to make an, quote-unquote, objective assessment in considering highest and best use based on current use. Here, nothing. Likelihood of property would be developed absenteeism. That gets to feasibility and marketability. And then any effect from zoning on highest and best use here, it would be allowed. Everyone agrees it'd be allowed. Those are the factors the district court did, the tax court did consider, right? Yes, Your Honor. However, when you have two competing experts in a valuation case like this, the court evaluates those opinions and the valuation of the property based on the criteria that those experts use. In this case, both appraisal experts used those four factors in determining the highest and best use. And the IRS relied on the mining expert, Mr. Ganesh, to determine the financial feasibility. And so when we're looking between those two reports, and they are both coming with a positive return, and if errors were corrected, would come to a positive return that meets... I know, but counsel, counsel, the facts are, as stated by the expert and accepted by the trial court, that this industry is one that is very localized because of the transportation costs. Two, that there's no local demand within 25 miles of Hart County. It's just in the middle of nowhere. Three, the places that actually would have demand are all places that have quarries right near them. And there was an example in Anderson where there's like a thousand pounds of rock that is just completely sitting there for people to buy. So why would you in Hart County, when no one around it wants it, with increased transportation costs for anyone around who would want it, and where there's quarries around those places? That seems to be what the tax court analysis is. That seems to be what the tax court did in TOT and what we approved in TOT. And I'm having trouble in not understanding how that's not logically correct. Yes, Your Honor. So what we're arguing here today is looking at how the court came to those conclusions and what facts and evidence it considered in making those conclusions. And when we're looking at both of the experts, our arguments in brief and today are that there were errors in the discounted cash flow analysis from the IRS's mining expert as well. It assumes you have to do a discounted cash flow analysis. It assumes that that's what needs to be done in order to make a marketability determination. That's certainly one way. It's not wrong to do it, but it isn't required in order to make the assessment that in order to determine basic economics of supply and demand. I'm not going to demand something from Hart County where it costs me more to get rock from there when I have rock that's easily available and cheaper right in my backyard. Right, Your Honor. And as I'm coming back to the experts, when we're looking at the mining experts, they're determining the financial feasibility, taking those factors into demand or into account for demand and market. The IRS's mining expert did as well as the taxpayer's expert. Didn't the judge analyze that in essence? If you look at his order, pages 38 through 42, he did go through that. If we remanded, you're going to go before the judge. What exactly is that judge going to do now if you win and it gets remanded? What the judge would do and what we're seeking is that they take into account the errors that that expert made in determining his financial feasibility analysis, as well as looking at what conclusions he relied on from the real estate appraiser, who made a lot of conclusions about the market and demand and the abundance of aggregate based on maps that he created. But he's not an expert in mineral valuation and has no experience in that field. I guess this is the question. Even if your property is the most unique in the world, you are sitting on the gold mine of aggregate in the entire United States. That would not change the demand for the aggregate and the fact that it is in the middle of nowhere, surrounded by nothing, for no one who wants to buy it. Those facts aren't going to change if everything you're saying is correct, right? No, Your Honor, because if this was remanded and the evidence was properly taken into account for the both of the experts, accounting for those errors, you have two experts coming together and agreeing on financial feasibility and that would make, that would force... Counsel, answer the question that I asked. Even if you are right, that they misread the maps, he wasn't qualified to read the maps, your property is more unique than any other property in a place that clearly has aggregate in every other property and is valued the same as five others. But your property is the most unique. There still wouldn't be anyone who's ready to buy it because it's far away from anywhere where people actually live and there are quarries in places where people actually live and those quarries actually have excess demand to them. Aren't all those facts as found, both supported by the record and as found by the tax court? Well, the tax court can certainly rely on those. It did, in fact, rely on them. And it did, yes. I guess my point is, if it did, and I think it did, and there's evidence to support it, and I think there is, what does it matter if there was the errors that you're talking about? Because the court didn't properly take into account the evidence before it and it can make the same determination a remand, but we're asking that it properly takes that into account and if there's no further questions... So you have criticized the tax court in the Blue Brief that the tax court legally erred in relying on Brigden's market-focused qualitative method of determining the highest and best use of the property. Are you suggesting that the error was because the analysis was qualitative and not quantitative? That's certainly part of it, yes, Your Honor. Is there any case law that any other circuit has required the tax court to perform a quantitative analysis before reaching a conclusion regarding the property's highest and best use? There's case law from the tax court that says that it must, that when you're comparing the two experts, that they look at the criteria that both of those experts used. In this case, both parties' experts used a quantitative analysis, but one came to the wrong result in using errors in their net present value, is what we're saying. So if that were properly taken into account, then the tax court would have that financial feasibility analysis that closely aligned and would have to then go look at the maximally productive use of the property. But didn't the tax court say we find significant flaws in the discounted cash flow analyses performed by the petitioner's experts and the query was not financially feasible? Yes, Your Honor, that's what the tax court held about the taxpayer's discounted cash flow analysis, but if those errors that I spoke about were corrected, the IRS's expert would have come to a very close result, similar to the petitioner's. How appropriate is it to use a discounted cash flow approach over vacant land? It is appropriate and has been used many times, especially in the context of real estate development and subdivisions with vacant land, and there's many cases that show that both experts coming in with a discounted cash flow analysis and the courts would look at those, would note the flaws in both of them, but what then would still utilize a discounted cash flow analysis in order to come to its determination of both highest and best use and fair market value. Thank you very much, Your Honor. Thank you, and you do have time for a rebuttal. Mr. Sheehan? May it please the Court, I'm Anthony Sheehan, and I represent the Commissioner of Eternal Revenue. I'd like to respond to some of the points the Court has already made. Can you do the last one, because that seems to be what this all boils down to, at least for oral argument purposes. So, as I understand your opposing counsel's argument, it's this. Whatever method may be used, if we're relying on experts, you have to go with the methodology they use, and if the methodology they used was quantitative as opposed to qualitative here, which he says that they both were, and if there are arithmetical errors that are made in assumptions regarding one of the experts that we're relied on, then that's an error and that has to be taken into account, and the result may be the same at the end, but there's at least have to take those things into account. That's what I hear the argument from your opposing counsel to be. Why is that? Where in that step is wrong? I would say it's wrong because, first of all, the tax court, any trier of fact, you consider all the evidence. In this case, there was both qualitative and quantitative evidence. Now, if it were a case where all the experts came in with discounted cash flow and none of the experts came in with comparative, then that's the record, but that's not the case here. In this case, we have Brigden's analysis of comparable properties, and as this court said in TOT Holdings, first of all, the price the actual seller received for a property near to the time of the transaction is overwhelming evidence. Secondly, we have Brigden's report, which is showing what is property selling for in Hart County? Property selling in Hart County at around $5,000 an acre, maybe a little bit more for mineral land, it is not selling at $224,270 an acre, which is what Scholz claims this property is worth. So I would say in answer to your question, the evidence in this case was there, and the tax court could quite properly consider all the evidence and decide which evidence best supports its analysis. And furthermore, Your Honor, the, as we say in our, quote in our brief... Do you agree there was an arithmetical error, or at least an improper assumption that was made in rendering the quantitative calculation? I would answer that question, Your Honor, by saying that one thing our expert did in his rebuttal report is he took the taxpayer's own, Mr. Gold was their expert, he took their, Mr. Gold's cost structure, the errors they allege were in his cost structure, so he took Mr. Gold's cost structure, and he ran that cost structure with various amounts of sales of aggregate, and at an average of around 281,000 tons of aggregate. And what did the judge say about that? Did he write about that in the order? He did not write about that specifically. That's what they're complaining about though, right? So what's the harm in sending it back? And he says, okay, now you want more details, I'll tell you more. The harm is that it just is not necessary to send it back because the record is clear that the demand certainly wasn't there. You go to the Appraisal Institute, their treatise on it, they actually say that a demand analysis must precede any other analysis. You look at the market, you see what demand is there, before you start number crunching. If the demand is not there, you do not spend extra time number crunching. Take, say, you know, there is certainly a demand for a coffee up in Midtown Atlanta, and say there's a vacant storefront there, and you look at the market and you see that there are four other stores on that same block, four other coffee shops, and they're all struggling because there's too many of them. You don't then go and try to crunch the numbers on the rent and everything else, because you could say the demand is not there, and the tax court, quite properly. So is what we say, in writing an opinion, would we need to say the tax court erred in relying on the mathematical number, but that error was harmless because? How would we say that? The tax court simply said we're not going to crunch the numbers on the various discount cash flow analysis. We're going to start off with, was there the demand there in the first place? And it was not. So the answer is the tax court actually did not, in the end, rely on a quantitative analysis. It simply made a quantitative determination. And that is not error because the regulations allow, and the code allows, the tax court to do. Yes, I'm sorry. Is that what, again, we have to write an opinion at the end of the day, and I just want to know what that opinion needs to say if we're going to adopt the position you're arguing to us. What that opinion would need to say, Your Honor, is that the tax court quite properly considered market demand first, looked at the population, looked at population growth, looked at the qualitative factors that were also there, looked at all the evidence that was there, all the other quarries around that were closer. But there's no doubt that that happened, but how do we describe the quantitative error or non-error? Is it that the court did consider it, but may have made a number, a crunch error, but that's not a problem because of this market analysis? Or is it that it didn't do a quantitative analysis or didn't adopt one at all? It only relied on the qualitative part. The court did not do the kind of discounted cash flow analysis that the other side is asking for. It did not adopt any of the parties it went straight to. The demand just isn't there. It's entitled to do that because the demand was not there. That is the first step. And so as long as we say, I'm sorry to interrupt, as long as we say that that's not required, that a quantitative analysis is not required, in order to do either under the tax code or the regulations, you're not required to do this, and the next court didn't do it, that was not error. What it did do was relied on this, and it's allowed to rely on that and make that determination. Yes, Your Honor. That's what an opinion would say. That's what an opinion would say, yes, Your Honor. Let's see, just looking at further, my notes here, I would say the four-factor test, as Judge Luck, I think you pointed out, is useful, it's helpful, but it's an end test. And if you fail one part of it, you don't have to consider the others. Is Judge Branch right that no circuit court, including ours, has adopted that test? They've sort of encanted it or articulated it, but not adopted it? I do not know of any court that has adopted it as a requirement. Lots of courts have mentioned it. I don't, in TOT properties, I don't think this court mentioned it. I don't think they mentioned it in Palmer Ranch. The Tenth Circuit mentioned it in one of the cases we cite in our brief, but it was in a footnote saying, these factors are helpful. The tax court has mentioned it, but again, I do not believe the tax court has ever said, you must look at all four factors. The regulations certainly don't drive it. It just says make an objective assessment of those three that I read. That is correct, Your Honor. And in the end, we're looking at the fair market value of vacant land. You have to find out what's the price at which this land would change hands, and the price that Savannah Schultz would put on this property is multiples in excess of what any buyer would pay. So, if there are any further questions, no further questions, we will rest in our brief and ask the court to affirm. Thank you. Thank you, Mr. Sheehan. Mr. O'Brien, you have reserved two minutes. Thank you, Your Honor. I just want to address a couple points that the opposing counsel has raised. The failure to remand this would, or the errors that were not considered, that does result in a harmful error in this case. And that's because when... Let me back up. Is the description that your opposing counsel and I talked about in the colloquy we just had, is that accurate? In other words, it's not that the tax court considered wrong numbers. It's that it didn't do or consider a qualitative analysis at all, a cash flow analysis, right? That is certainly part of it, yes. Well, is that all of it? Well, it's not all of it in that the errors, had they been corrected, could have led to a different result. But did the... Let me ask it as cleanly as I can. Did the tax court, in its ultimate conclusion here, consider a quantitative slash cash flow analysis in rendering its opinion? It did not. Okay. So the error that you're alleging to us is saying it's got to do that. That's part of what it has to do. That's what you're arguing to us, right? Yes, Your Honor. And if we reject that, then the district court would not have erred, at least on that portion of it, right? Right. Okay. That's what I understand. Thank you. It really boils down to what the tax court said on page 38. It is unnecessary for us to examine these arguments under the discounted cash flow analysis because we find that petitioners' experts severely overestimated demand for aggregate and failed to account for existing supply in the market. That's the error that you're claiming. He couldn't say that. From now on, if we agree with you, a tax court must examine everything. That's what we would be saying, right? No, Your Honor. We're not arguing that in the instance where one party doesn't use a discounted cash flow and another does, that they can't decide who's more credible. But in an instance such as this, where you have two experts with a discounted cash flow analysis coming together with a net present value that would closely align if the errors had been corrected— But what do we say about market demands precisely? Market demand is to be taken into account as a factor in examining the financial feasibility of the property—  —but it is not the end and beginning of that analysis. Thank you very much, Your Honors. Thank you. Thank you both. We have your case under advisement. Thank you. Thank you. Our second case.